UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Case No.

**SABRINA J. TERRY,**
    Plaintiff,

-VS-

**SACRED HEART HEALTH SYSTEM,
INC., d/b/a ASCENSION SACRED
HEART HOSPITAL,**
    Defendant.

_____

## COMPLAINT
(Jury Trial Demanded)

Plaintiff, SABRINA J. TERRY, sues the Defendant, SACRED HEART HEALTH SYSTEM, INC., d/b/a ASCENSION SACRED HEART HOSPITAL, and as grounds alleges:

## PARTIES

1. Plaintiff, Sabrina J. Terry ("TERRY"), is a female citizen of the United States and a former resident of Escambia County, Florida. Plaintiff is of African American race, ethnicity, and ancestry.

    Defendant, Sacred Heart Health Systems, Inc. d/b/a Ascension Sacred Heart Hospital ("SACRED HEART"), operates a hospital in Pensacola, Florida. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1991 and the Florida Civil Rights Act, §760.101 et seq, Florida Statutes.

## JURISDICTION AND VENUE

2. This is an action arising under the Title VII of the 1991 Civil Rights Act, as well as 28 United States Code §1981, and under the Florida Civil Rights Act. The Court has jurisdiction pursuant to 28 U.S.C. 1331 and §1337 as this action arises under federal law and federal laws pertaining to civil rights.

3. This Court has supplemental jurisdiction over the claims arising under Florida Law:

4. Sacred Heart conducts operations in the Northern District of Florida and venue is proper in this district.

## CONDITIONS PRECEDENT

5. Plaintiff filed a formal complaint of discrimination on July 28, 2020 with the United States Equal Employment Opportunity Commission and the Florida Commission on Human Relations. This charge specified race discrimination.

6. Plaintiff filed an amended change in August 2020 alleging retaliation by the Defendant as well as race.

## GENERAL ALLEGATIONS

7. Plaintiff is a licensed occupational therapist in the State of Florida and elsewhere.

8. Plaintiff was employed by a sister hospital in Texas until June, 2018 when she accepted a position at Sacred Heart in Pensacola as Manager of Acute Rehabilitation Services.

9. As such, she supervised forty-two employees and in turn, she reported to the Director of Rehabilitation Services, Julie-Ann Rispoli.

10. Julie-Ann Rispoli is Caucasian.

11. Rispoli had four managers' report to her. All of the managers, except for Plaintiff, were Caucasion.

12. Hospital-wide there were approximately forty managers, including Plaintiff. Four were African American, one was Hispanic, and the remainder was Caucasian. All higher level administrators were Caucasian.

13. Consequently, of the personnel in management at Sacred Heart, the glass ceiling for African Americans were the lowest level manager.

14. Those managers were severely underrepresented by race. At the time of Plaintiff's employment in the metropolitan Pensacola area, was in a community in the major racial groups were White or Caucasian: (63.57%) and Black or African American: (28.63%).

15. During Plaintiff's tenure as a leadership employee of Ascension Healthcare at Providence Hospital in Waco, Texas from May 2016 to June 2019, Plaintiff achieved all department goals, decreased department complaints, and received no disciplinary actions.

16. During the same time period, Plaintiff's work performance at Providence Hospital in Texas was rated as "achieves expectations" and she received a position promotion to

manager and relocation to Sacred Heart Hospital in Pensacola, Florida.

17. During Plaintiff's tenure as a manager at Sacred Heart from June 18, 2018 to June 15, 2020, Plaintiff met work performance expectations and had not received any disciplinary actions.

18. Commencing on June 16, 2020, during the pandemic, Plaintiff was told by Rispoli that employees had made "multiple complaints" against her. These alleged complaints were all made anonymously to the Defendant's compliant hotline. Plaintiff requested to be provided with the details of the alleged complaints and to be given the associated dates of occurrences of these complaints.

19. These complaints were all made by Caucasian employees who were, for the first time, reporting to a black manager.

20. On June 17, 2020, Plaintiff again asked for details regarding the alleged complaints but she was never given access to those complaints.

21. On June 26, 2020, when Plaintiff finally received the requested details, she learned that the complaints included matters and issues completely outside of Plaintiff's ability to correct. For instance, they complained about calendaring procedures, which predates Plaintiff's employment.

22. When Rispoli confronted Plaintiff on June 26, 2020 she offered Plaintiff the opportunity

to resign or to be put on an "Action Plan".

23. On June 29, 2020, Plaintiff chose the option of receiving an "Action Plan" from the Defendant.

24. On June 29, 2020, Plaintiff communicated, in writing, to Rispoli and two Human Resource business Partners her concerns regarding following proper policy and procedures during this process, and differential treatment and discrimination against her.

25. Plaintiff's written complaint to Rispoli and Human Resources Department was never investigated by the Defendant. Indeed, Plaintiff was never even interviewed by the Defendant regarding her internal discrimination complaint.

26. Plaintiffs' attorney at the time had written a certified letter to Defendant on July 6, 2020, outlining her complaints about race discrimination by the Defendant.

27. Given no internal investigation by Defendant regarding Plaintiff's complaint of discrimination, Plaintiff dually filed a formal charge of discrimination with the FCHR and EEOC on or about July 28, 2020.

28. In spite of Plaintiff's request for the details of the complaints, including the associated dates of those complaints, Plaintiff was never given the dates of occurrences and was only told about the specific complaints on July 29th and 31st, 2020.

29. After Plaintiff elected the "Action Plan" from Defendant, for the first time she learned of the vague, illusory, and false allegations contained within some of the alleged complaints;

30. the revelation of the specific complaints against Plaintiff showed that Defendant was simply still accumulating employee complaints without any contemporaneous action investigation.

31. The Defendant purposefully did not investigate with the expectation that if it gathered enough complaints it could convince the Plaintiff to simply resign.

32. Plaintiff's resistance to Defendant's scheme, along with the filing of a formal Charge of Discrimination, caused the Defendant to take more aggressive action.

33. Despite receiving the complaints of racial discrimination from Plaintiff's attorney as early as July 6, 2020, the Defendant took no action to investigate her complaints, while accepting the complaints of the Caucasian subordinates.

34. While engaging in protected activity, on August 11, 2020 Plaintiff was terminated.

35. The FCHR made a finding of reasonable cause on January 29, 2021 and this case was filed within one year of that finding.

## COUNT I

*Violation of Title VII, §1981, and the Florida Civil Rights Act (Race Discrimination)*

36. Plaintiff re-adopts and re-alleges ¶¶1-35 above as if fully set forth herein.

37. TERRY was subjected to discrimination because of her race in that she was subjected to discrimination when the Defendant failed to support her when Caucasian employees conspired to get her removed and replaced by a Caucasian supervisor.

38. The Defendant then further sought to induce her to resign by refusing to provide information of the complaints against her.

39. The Defendant ignored Plaintiff's complaints about race discrimination in the workplace and further treated her differently from Caucasian managers in terms of discipline.

40. As a direct, natural, foreseeable, and proximate result of the actions and inactions of the Defendant, by and through the actions and inactions of its managerial personnel, Plaintiff has suffered injuries and losses including a violation of her statutory rights, pain and suffering and extreme emotional stress, and the loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

## COUNT II

*Violation of Title VII, §1981, and the Florida Civil Rights Act (Retaliation)*

41. Plaintiff re-adopts and re-alleges ¶¶ 1-35 above as if fully set forth herein.
42. TERRY was terminated very shortly after filing a Charge of Discrimination against the Defendant.
43. As a direct, natural, foreseeable, and proximate result of the actions and inactions of the

Defendant, by and through the actions and inactions of its managerial personnel, Plaintiff has suffered injuries and losses including a violation of her statutory rights, pain and suffering and extreme emotional stress, and the loss of ability to lead a normal life, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff prays for the following relief:

a. Entry of a judgment for restitutionary, compensatory, and liquidated damages, including, but not limited to, damages for emotional pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life. Order the reinstatement of Plaintiff which full back pay and benefits or in lieu of resolution, award front pay;
b. Award Plaintiff her costs in this action, including reasonable attorney's fees and expert fees as provided by the ADA; and
c. Any other equitable relief deemed appropriate by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

BY: /s/ G. Ware Cornell, Jr.
G. Ware Cornell, Jr
Fla. Bar No.: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
*Counsel for Plaintiff*
2645 Executive Park Drive
Weston, Fla. 33331
Tel: (954) 618-1041